IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN W. PROCTOR, )
)
         Plaintiff, )
)
vs. )   Case No. 04-2388-GTV
)
UNITED PARCEL SERVICE, )
)
         Defendant. )
_____)

## COMPLAINT

Plaintiff, John W. Proctor, for his claim for relief against the defendant, United Parcel Service, states and alleges as follows:

### JURISDICTION AND VENUE

1. This is an employment case based upon and arising under the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. §12101 et seq.

2. This court has subject matter jurisdiction over the plaintiff's federal claims pursuant to 29 U.S.C. § 1331, since these claims arise under federal statutory law. The court also has jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 and 28 U.S.C. §1332.

3. All of the unlawful acts and practices set forth below were committed in the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

4. Plaintiff filed administrative charges which encompass a portion of the wrongful acts alleged in this action.

## PARTIES

4. The plaintiff, John W. Proctor, is a citizen and resident of Topeka, Kansas. Additionally, Mr. Proctor is a former employee of the defendant who worked in defendant's Kansas facility.

5. The defendant, United Parcel Service (hereinafter "UPS") is a corporation doing business in Kansas with facilities in Lawrence, Kansas and in Lenexa, Kansas. .

## FACTUAL ALLEGATIONS

6. Mr. Proctor began his employment with United Parcel Service on or about January 11, 1988, as a package car driver.

7. On or about February 20, 1998, while working for the defendant, Mr. Proctor injured his left wrist which resulted in him having surgery. The injury arose out of and in the course of his employment with the defendant.

8. Mr. Proctor was initially treated by Dr. Fevurly for his wrist injury and was eventually referred to Dr. Towle.

9. Mr. Proctor returned to work from his wrist injury to UPS in December of 1998 as a package car driver. He was able to return to his regular job duties but continued to have significant problems with his wrist.

10. Over a two-and-a-half year period, Mr. Proctor underwent approximately four surgeries on his wrist.

11. On or about October 25, 1999 during his employment for defendant, Mr. Proctor injured his lower back and his right ankle while lifting a heavy box. The injury arose out of and in the course of his employment with defendant. These injuries did not require surgery.

12. Mr. Proctor was referred to Dr. Chris Fevurly, the company physician.

13. Dr. Fevurly initially saw Mr. Proctor for his lower back and ankle injury on or about November 1, 1999.

14. Mr. Proctor was referred for a surgical consultation to Dr. Craig Yorke, who determined that Mr. Proctor was not eligible for surgery on his back. Mr. Proctor attended work-hardening sessions where he was able to lift 50 to 60 pounds with pain still remaining in his lower back.

15. On March 30, 2001, Mr. Proctor was examined by Dr. Edward Prostic, who formed the opinion that Mr. Proctor had a herniation of his disc at L3-4, and that Mr. Proctor should continue under the work restrictions imposed by Dr. Fevurly.

16. Subsequent to his job-related injuries, Mr. Proctor filed worker's compensation claims.

17. On February 20, 2002 Dr. Lynn Ketchum evaluated Mr. Proctor's functional capacity. Dr. Ketchum recommended that Mr. Proctor was ready to return to UPS to resume his job, but with a restriction of not working more than eight (8) hours per day with a six week follow up.

18. After the six-week follow up, Mr. Proctor's eight-hour work restriction was dropped, and Dr. Ketchum stated he was able to return to work. However, UPS's physician would not release Mr. Proctor to return to work, and Mr. Proctor has never been allowed to return to work.

19. On or about July 15, 2002, Mr. Proctor contacted UPS and requested job-related accommodations due to his disability arising from his work-related injuries.

20. On September 6, 2002, UPS refused to grant Mr. Proctor any accommodations for his disability.

21. Several months later, Mr. Proctor again requested work-related accommodations, and on March 12, 2003, UPS again denied Mr. Proctor's request for job-related accommodations.

22. On or about March 22, 2003, Mr. Proctor filed a timely administrative charge against UPS with the Equal Employment Opportunity Commission (hereinafter "EEOC"), alleging violations of the ADA.

23. On or about September 11, 2003, Mr. Proctor filed a timely administrative charge of discrimination against UPS with the Kansas Human Rights Commission (hereinafter "KHRC"), alleging violations of the Kansas Act Against Discrimination (hereinafter "KAAD"), K.S.A. 44-1001, et seq. Specifically, Mr. Proctor alleged that UPS had continuously failed to reasonably accommodate his disability by refusing to allow him to return to work.

24. On or about October 31, 2003, the KHRC issued a determination of "No Probable Cause" in regard to Mr. Proctor's failure-to-accommodate claim under the KAAD. The KHRC stated that "this determination constitutes exhaustion of administrative remedies should complainant choose to pursue this matter further by court action."

25. On January 14, 2004, UPS sent Mr. Proctor a letter, stating that his worker's compensation claims were all closed as of January 14, 2004 and therefore his employment with UPS was being terminated.

26. On or about May 6, 2004, Mr. Proctor filed another administrative charge against UPS, docketed as charge No. 281-2004-04088, alleging discrimination and retaliation in violation of the ADA. Specifically, Mr. Proctor alleged that UPS had discriminated and/or retaliated against him because of his disability by refusing to allow him to return to work, and by terminating his employment.

27. On May 20, 2004, the EEOC issued a right-to-sue letter to Mr. Proctor in regard to charge No. 281-2004-04088. Mr. Proctor received the right-to-sue letter on or about May 24, 2004.

## COUNT I - WRONGFUL DISCHARGE
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

28. Plaintiff incorporates by reference the above numbered paragraphs 1 through 27 as fully set forth in Count I.

29. Mr. Proctor meets the definition of a person with a disability within the meaning of the ADA.

30. Mr. Proctor was qualified for the position of package car handler because he can perform the essential functions of that job, with or without reasonable accommodation.

31. UPS discriminated and/or retaliated against Mr. Proctor by discharging him because of his disability in violation of the ADA.

WHEREFORE, plaintiff prays for judgment against defendant in excess of $100,000.00, consisting or back pay, front pay, prejudgment and post-judgment interest, compensatory damages, punitive damages, attorney fees, litigation expenses and such other and further relief as the Court deems just and proper.

## COUNT II - FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

32. Plaintiff incorporates by reference the above numbered paragraphs 1 through 27 as fully set forth in Count II.

33. Mr. Proctor meets the definition of a person with a disability within the meaning of the ADA.

34. Mr. Proctor requested reasonable accommodations so that he could perform the essential functions of his position as a car package driver.

35. UPS refused to make reasonable accommodations to the known or perceived disability of Mr. Proctor who is an employee of UPS.

36. The requested job-related accommodations would not have imposed an undue hardship on the operations of UPS.

37. UPS discriminated and/or retaliated against Mr. Proctor by refusing to grant him reasonable accommodations, in violation of the ADA.

WHEREFORE, plaintiff prays for judgment against defendant in excess of $100,000.00, consisting of back pay, front pay, prejudgment and post-judgment interest, emotional pain and mental anguish, punitive damages and such other and further relief as the Court deems just and proper.

## COUNT III - WORKERS COMPENSATION
## RETALIATORY DISCHARGE

38. Plaintiff incorporates by reference the above numbered paragraphs 1 through 27 as though fully set forth in Count III.

6

39. Mr. Proctor filed worker's compensation claims in 1999, after he had sustained injuries to his left wrist in 1998 and to his lower back and right ankle in October 1999.

40. UPS had knowledge of these claims, and the fact that Mr. Proctor sustained work-related injuries on two separate occasions.

41. On January 14, 2004, Mr. Proctor received a letter from UPS, stating that his worker's compensation claims had been closed, and therefore his employment with UPS was being terminated.

42. Mr. Proctor's filing of worker's compensation claims was a motivating factor in UPS' decision to discharge him from employment.

WHEREFORE, plaintiff prays for judgment against defendant in excess of $100,000.00 consisting of back pay, front pay, prejudgment and post-judgment interest, emotional pain and mental aguish, punitive damages, and such other and further relief as the Court deems just and proper.

## COUNT IV - FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE KANSAS ACT AGAINST DISCRIMINATION

43. Plaintiff incorporates by reference the above numbered paragraphs 1 through 27 as though fully set forth in Count IV.

44. Mr. Proctor meets the definition of a person with a disability within the meaning of the KAAD.

45. Mr. Proctor requested reasonable accommodations so that he could perform the essential functions of his position as a car package driver.

46. UPS refused to make reasonable accommodations to the known or perceived disability of Mr. Proctor.

7

47.     The requested job-related accommodations would not have imposed an undue hardship on the operations of UPS.

WHEREFORE, plaintiff prays for judgment against Defendant in excess of $100,000.00, consisting of back pay, front pay, prejudgment and post-judgment interest, compensatory damages, punitive damages, attorney fees, litigation expenses and such other and further relief as the Court deems just and proper.

                SLOAN, EISENBARTH, GLASSMAN
                McENTIRE & JARBOE, L.L.C.

BY: _____
      Alan V. Johnson, KS #9992
      1000 Bank of America Tower
      534 South Kansas Avenue
      Topeka, Kansas 66603-3456
      Attorney for Plaintiff

## DESIGNATION OF PLACE OF TRIAL

Plaintiff requests that Kansas City, Kansas, be designated as the place of trial in the above-captioned matter.

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY: _____
Alan V. Johnson, KS #9992
1000 Bank of America Tower
534 South Kansas Avenue
Topeka, Kansas 66603-3456
Attorney for Plaintiff

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby requests a trial by jury on all claims triable to a jury.

                      SLOAN, EISENBARTH, GLASSMAN
                      McENTIRE & JARBOE, L.L.C.

BY: _____
      Alan V. Johnson, KS #9992
      1000 Bank of America Tower
      534 South Kansas Avenue
      Topeka, Kansas 66603-3456
      Attorney for Plaintiff