IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JOHN W. PROCTOR,

        Plaintiff,

    vs.                  **Case No. 04-2388-RDR**

UNITED PARCEL SERVICE,

        Defendant.

---

**MEMORANDUM AND ORDER**

Plaintiff alleges discrimination and retaliation in the termination of his employment by defendant in violation of federal and state law. According to the final pretrial order, plaintiff has four theories of recovery: 1) wrongful discharge of plaintiff from his employment in retaliation for filing an administrative charge of disability discrimination, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; 2) failure to grant plaintiff's request for a reasonable accommodation for his perceived disability, in violation of the ADA; 3) failure to grant plaintiff's request for a reasonable accommodation for his perceived disability, in violation of the Kansas Act Against Discrimination ("KAAD"), K.S.A. 44-1001 et seq.; and 4) wrongful discharge of plaintiff from his employment in retaliation for filing workers' compensation claims, in violation of Kansas public policy. Doc. No. 37 at p. 9.

This case is now before the court upon defendant's motion for summary judgment. A motion from plaintiff to file a surreply brief

regarding the motion for summary judgment is also pending. Plaintiff's motion shall be granted.

## Summary judgment standards

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant has the burden to "demonstrate an absence of a genuine issue of material fact given the relevant substantive law." Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.) cert. denied, 506 U.S. 1013 (1992). The court reviews the evidence and draws all reasonable inferences in the light most favorable to the nonmovant. Thomas v. International Business Machines, 48 F.3d 478, 484 (10th Cir. 1995). Summary judgment shall be granted unless there is evidence upon which a reasonable jury could find for the nonmovant. Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1490 (10th Cir. 1995) cert. denied, 516 U.S. 1160 (1996). Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion. White v. York Int'l Corp., 45 F.3d 357, 363 (10th Cir. 1995).

## Uncontroverted facts

The following facts are considered uncontroverted for the purposes of defendant's summary judgment motion.

Plaintiff was employed by defendant as a package car driver. The written job description for that position provides that package

car drivers are required to: lift packages occasionally weighing up to 70 pounds; lift packages to heights above the shoulder and lower packages to foot level; assist in moving up to 150 pounds; bend, stoop, crouch, climb, stand, sit, walk and turn/pivot for up to 9.5 hours per day, 5 days per week; and work extended hours as service needs dictate.

On February 20, 1998, plaintiff injured his wrist when attempting to move a 150-pound tractor blade inside the package car. He underwent surgery and eventually returned to work. On October 25, 1999, plaintiff sustained a back injury when he bent over and tried to pick up a 50 to 60 pound package. Dr. Chris Fevurly examined plaintiff on November 8, 1999 and released him to return to work with no restrictions. One week later, however, plaintiff suffered another back injury. Dr. Fevurly examined plaintiff again, imposed a lifting restriction of 15 pounds, and instructed plaintiff not to engage in any repetitive bending or stooping. On December 2, 1999, following another examination by Dr. Fevurly, plaintiff was released to return to work with a lifting restriction of thirty pounds. Plaintiff did return to work for defendant in December 1999. His last day working was December 24, 1999.

Plaintiff filed workers' compensation claims with regard to his back and wrist injuries. His latest workers' compensation claim was in November 1999.

Plaintiff had doctor's restrictions which prevented him from performing the essential functions of the package car driver position from January 2000 to January 2002.  From January 2000 to July of 2000 plaintiff was seen repeatedly by Dr. Fevurly.  On July 28, 2000 Dr. Fevurly found that plaintiff had reached "maximum medical improvement" and imposed a permanent 50-pound lifting restriction.

Plaintiff continued to see his own doctors.  Plaintiff's back doctor, Dr. Edward Prostic, issued plaintiff a release to return to work with no restrictions on February 1, 2002.  Plaintiff's wrist doctor, Dr. Lynn Ketchum, released plaintiff to return to work with an 8-hour limitation on or about February 12, 2002 and issued plaintiff a full release on April 3, 2002.

Plaintiff presented these releases to defendant, but defendant did not allow plaintiff to return to work.  Therefore, on April 15, 2002, plaintiff filed a grievance against plaintiff for refusing to allow plaintiff to return to work in violation of the collective bargaining agreement.

Plaintiff's employment was covered by a collective bargaining agreement (CBA) between defendant and the International Brotherhood of Teamsters, Local Union No. 696.  Article 20, Section 2 of the CBA provides that:

> once an employee notifies the Employer that he/she has been released to return to work by the employee's doctor, the Company doctor must examine the employee within three (3) working days from the time the employee brings the

4

return-to-work slip to the Employer.

Pursuant to this section, Dr. Fevurly examined plaintiff on April 18, 2002 and did not release him to return to work.  He stated that plaintiff's work status was "to be determined."

Article 20, Section 3 of the CBA provides that:

> The Employer reserves the right to select its own medical examiner or doctor and the Union may, if it believes an injustice has been done an employee, have said employee re-examined at the employee's expense.  If the two (2) doctors disagree, the Employer and the Union shall mutually agree upon a third (3rd) doctor within ten (10) working days, whose decision shall be final and binding on the Employer, the Union, and the employee.  Neither the Employer nor the Union will attempt to circumvent the decision of the third (3rd) doctor and the expense of the third doctor shall be equally divided between the Employer and the Union.

Pursuant to this provision, defendant and plaintiff's union selected Dr. Robert Brown to perform a medical examination of plaintiff.  Dr. Brown examined plaintiff on April 30, 2002.  He imposed a forty-pound lifting restriction on plaintiff and stated, "I do not recommend that he return to package car driving at United Parcel Service."

Defendant informed plaintiff that it would not return plaintiff to work on account of the restrictions imposed by Dr. Fevurly and Dr. Brown.  After this plaintiff did not receive any wages or benefits from defendant.  Plaintiff did receive workers' compensation benefits, however.

Plaintiff requested an accommodation under the ADA on or about July 15, 2002.  On September 11, 2002 Dr. Fevurly was asked for

clarification regarding his opinion on the ability of plaintiff to meet the essential job functions of a package car driver.  Dr. Fevurly replied the same day:

> His past ability (over the last 3.5 years) to perform the essential job functions is the most predictive factor for the future ability to safely perform the essential job functions over the expected 40 to 50 hour job week.  He is not qualified to perform the constant or frequent lifting of 70 pounds as specified in the job duties.  He is not qualified to perform the repetitive climbing on and off the package truck required in this job duty.  He is not qualified to perform repetitive forceful gripping and twisting with the left wrist/arm as required in this job duty.  With these limitations, he is not qualified to perform the essential functions of the package car driver.

On March 12, 2003, defendant sent a letter to plaintiff informing him "that based upon the medical information that we have received we are unable to conclude that you are eligible for a reasonable accommodation pursuant to the Americans with Disabilities Act."

On March 18, 2003 plaintiff was examined by Dr. Michael Poppa in connection with plaintiff's workers' compensation case.  Dr. Poppa was retained by defendant's workers' compensation insurance carrier.  Dr. Poppa concluded:

> Since Mr. Proctor has reached maximum medical improvement concerning all work related accidents and resulting injuries, he is capable of returning to work with the following permanent restrictions as noted on his Functional Capacity Evaluation dated 2/12/02.  This includes occasional lifting from floor to knuckle of 70 pounds; occasional lifting of knuckle to shoulder height at 55 pounds; occasional lifting from shoulder to overhead of 45 pounds; occasional carrying 70 pounds at 50 feet; and occasional push/pull of 260 pounds.  He is capable of frequent standing, walking, stair climbing, forward reach, overhead reach, repetitive reach,

6

repetitive    squatting,    push/pull,    pivot    twisting,
stacking, and grasping.

On March 22, 2003 plaintiff filed an administrative charge
with the Office of Federal Contract Compliance Program ("OFCCP").
Plaintiff signed a charge with the Equal Employment Opportunity
Commission ("EEOC") on May 7, 2003, and a charge with the Kansas
Human Rights Commission ("KHRC") in September 2003.   In these
charges, plaintiff alleged that defendant engaged in disability
discrimination when it failed to accommodate plaintiff and failed
to return him to work even though his doctors released him to
return to work.  Each agency found no probable cause.  The EEOC's
finding was made on August 19, 2003.  The KHRC's finding was on
October 31, 2003.  The OFCCP's finding was on December 19, 2003.
Each agency issued right to sue letters.  Plaintiff did not sue on
the basis of these right to sue letters, however.

On June 17, 2003 an administrative law judge entered an order
awarding plaintiff benefits on his workers' compensation claims.
This order was appealed by defendant and its insurance carrier to
the Appeals Board for the Kansas Division of Workers Compensation.

In July of 2003 plaintiff attended the last local hearing
concerning his grievance against defendant for refusing to allow
him to return to work.  During the hearing, plaintiff's union
representative called Ms. Monica Sloan to ask what was the status
of settlement negotiations in plaintiff's workers' compensation
case and whether defendant was going to allow plaintiff to return

to work.  Ms. Sloan responded, "[W]e're going to pay him a work comp settlement and as far as I'm concerned he can go eat shit and die."

On December 31, 2003 the Appeals Board for the Kansas Division of Workers' Compensation issued an order, modifying in part the award of benefits by the Administrative Law Judge to the plaintiff in his workers' compensation case.  Ten to twelve days later, Ms. Sloan received and reviewed a copy of the Appeals Board's order.

On January 14, 2004 Ms. Sloan wrote plaintiff's union representative to inform him that defendant had closed all workers' compensation claims on plaintiff and that plaintiff would be separated from employment with defendant as of that date.  This is the only document indicating plaintiff's formal separation from employment, but plaintiff testified in his deposition that by March 2003 he had been advised that he was not eligible for accommodation under the ADA and that defendant would not allow him to return to work as a package car driver.

An internal document dated January 14, 2004 recorded plaintiff's termination and listed as the reason for termination: "Failure to return to work from a work injury, has permanent restrictions, not ADA level."  Ms. Sloan stated in her deposition that plaintiff's termination was consistent with the custom and practice of defendant, which she described as:  "When the worker comp claim is resolved and the employee is not at work, not back to

work the employment is separated." This custom and practice is followed regardless of whether the worker can perform the essential functions of the job at the end of the workers' compensation proceeding.

The termination decision was not based upon a consideration of plaintiff's ability to perform the job responsibilities as of January 14, 2004, or as of the date of the closure of the workers' compensation proceeding. Plaintiff has testified that he is able to lift 70 pounds with frequency and is able to assist someone in moving 150 pounds.

On January 23, 2004 plaintiff again requested defendant to return him to work as a package car driver. Defendant did not respond favorably or perhaps at all to this request.

On May 6, 2004 plaintiff filed a questionnaire with the EEOC which was treated as a second charge of discrimination. In this charge, plaintiff alleged that defendant failed to accommodate his disability and subsequently terminated his employment. The EEOC issued a right to sue letter on May 20, 2004, the same date it gave notice of the charge to defendant.

This lawsuit was filed on August 20, 2004.

<u>Summary judgment arguments</u>

1. **Statute of limitations**

Both parties agree that a cause of action accrues under the ADA on "the date the employee is notified of an adverse employment

decision by the employer." Hulsey v. K-Mart, Inc., 43 F.3d 555, 557 (10th Cir. 1994) (applying the rule to the ADEA). "'Generally, an employee is notified of an adverse employment decision when a particular event or decision is announced by the employer.'" Id., quoting Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir. 1988). "It is the clarity of the notice received, not whether it is memorialized on official stationery or reduced to writing, that determines the accrual of causes of action premised upon wrongful deprivation of employment . . ." Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992) (a § 1983 case). Even if the notice the employee receives is informal and even if the employee continues to work and receive salary and benefits, once the employee learns of the decision to terminate his employment, the statute of limitations begins to run. Id.; see also, Pearson v. Macon-Bibb County Hospital Authority, 952 F.2d 1274, 1279 (11th Cir. 1992) (Title VII claim accrues on date of meeting where plaintiff is told that she has the option of resignation, transfer or termination, not date of termination); Ching v. MITRE Corp., 921 F.2d 11, 14 (1st Cir. 1990) (informal notice of termination to plaintiff's attorney commences accrual of limitations period); Madison v. St. Joseph Hospital, 949 F.Supp. 953, 959-60 (D.N.H. 1996) (ADA claim accrues when plaintiff is told by phone that she will be discharged, not later when she receives termination letter); Farmer v. City of Fort Lauderdale, 814 F.Supp. 1101, 1102

(S.D.Fla. 1993) (§ 1983 action challenging employment termination accrues with oral notice of termination).   In this instance, plaintiff has admitted in his deposition that he knew in April 2002 that he would not receive anything more from defendant once his workers' compensation case was closed.   At that time his salary and benefits from defendant had already ceased.   He further admits that he was informed in March 2003 that his request for accommodation under the ADA was rejected.   These events led plaintiff to file administrative charges in 2003.   Plaintiff later renewed his requests for accommodation, reinstatement or reconsideration. These requests do not refresh the limitations period.   Meiners v. University of Kansas, 239 F.Supp.2d 1175, 1192 (D.Kan. 2002); Nyhart v. U.A.W. International, 174 F.Supp.2d 1214, 1217 (D.Kan. 2001).

The ADA requires a plaintiff to file an action within ninety days of the issuance of a right to sue letter.   42 U.S.C. § 12117(a) (incorporating the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1)).   Plaintiff failed to bring this lawsuit within 90 days of his receipt of the right to sue letters issued in response to his 2003 administrative charges which complained that he was not allowed to return to work. Plaintiff's May 6, 2004 questionnaire/complaint cannot be considered a timely administrative complaint if the court finds that plaintiff had notice by April 2003 that he would not be

retained as an employee by defendant.   See 42 U.S.C. § 2000e-
5(f)(1) (establishing 300 days from the date of the alleged
unlawful employment practice as the limitations period for bringing
an administrative charge).  The record on summary judgment supports
such a finding.

Therefore, plaintiff's claims under the ADA may be dismissed
as untimely.

2. **"Disability"**

In general, to prevail upon a claim of disability
discrimination under the ADA and the KAAD, a plaintiff must
establish that he or she is "disabled."[1]  In turn, to establish
"disability" under these statutes a plaintiff must prove:

> (A) a physical or mental impairment that substantially
> limits one or more of the major life activities of such
> individual; (B) a record of such an impairment; or (C)
> being regarding as having such an impairment.

42 U.S.C. § 12102(2).  In other words, a plaintiff must prove
actual disability, a record of disability, or perceived disability.
In this case, plaintiff does not allege that his back and wrist
injuries amounted to an actual disability as defined by the ADA,
that is, a disability that substantially limits one or more of the
major life activities.  Although in the final pretrial order
plaintiff alleges a failure to accommodate a perceived disability,

---

[1] We assume, as have other courts, that the ADA and KAAD apply
the same rules to this aspect of disability discrimination law.
See Holopirek v. Kennedy and Coe, 303 F.Supp.2d 1223, 1229 (D.Kan.
2004).

12

he does not carry this contention into his response to defendant's summary judgment motion.  Instead, plaintiff asserts that he can prove "disability" by demonstrating that he had a record of impairment that amounts to a "disability" under the ADA and KAAD.

"To have a record of . . . impairment, a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity." <u>Sorensen v. University of Utah Hospital</u>, 194 F.3d 1084, 1087 (10th Cir. 1999).

> For an impairment to substantially limit a major life
> activity, the individual must be unable to perform, or be
> significantly limited in the ability to perform, an
> activity compared to an average person in the general
> population.  29 C.F.R. § 1630.2(j) [additional citation
> omitted].  The EEOC has established the following factors
> to be considered in determining whether an individual is
> substantially limited in a major life activity: "(i) The
> nature and severity of the impairment; (ii) The duration
> or expected duration of the impairment; and (iii) The
> permanent or long term impact, or the expected permanent
> or long term impact of or resulting from the impairment."
> 29 C.F.R. § 1630.2(j)(2) [additional citation omitted].
> For example, the EEOC Interpretive Guidance describes a
> broken leg that takes eight weeks to heal as an
> impairment of fairly brief duration.  29 C.F.R. § 1630,
> App. § 1630.2(j).

<u>Id</u>.

In this case, plaintiff had a lifting restriction of 15 pounds from November 15, 1999 to December 2, 1999.  After that, the restriction was increased to 30 pounds.  Ultimately, on July 28, 2000 a permanent lifting restriction of 50 pounds was placed on plaintiff by Dr. Fevurly.

The Tenth Circuit has held that a permanent 40-pound lifting

restriction is not a "disability" under the ADA.  <u>Lusk v. Ryder</u>
<u>Integrated Logistics</u>, 238 F.3d 1237, 1240-41 (10th Cir. 2001).  The
Tenth Circuit has also rejected evidence of more stringent
temporary lifting restrictions as presenting an issue of fact
concerning whether there is a record of disability.  <u>Rakity v.</u>
<u>Dillon Companies, Inc.</u>, 302 F.3d 1152, 1159-62 (10th Cir. 2002).

We do not believe the record in this case presents a genuine
issue of fact as to whether plaintiff had a record of disability as
that term is defined for purposes of the ADA and KAAD.  Therefore,
plaintiff's claim for failure to accommodate on the basis of a
record of disability may be dismissed.

3.  **Retaliation**

Plaintiff claims that he was discharged in retaliation for
filing administrative charges of disability discrimination and in
retaliation for filing workers' compensation claims.  Defendant
contends that plaintiff was discharged because, pursuant to the
collective bargaining agreement, plaintiff was determined to be
disabled from working as a package car driver and because there was
no legal duty under the ADA to accommodate plaintiff with a
different position.

To establish a prima facie case of retaliation under the ADA,
plaintiff must demonstrate that:  1) he engaged in protected
opposition to discrimination; 2) defendant subjected him to an
adverse employment action subsequent to the protected activity; and

3) a causal connection exists between the protected activity and the adverse employment action. <u>Pastran v. K-Mart Corporation</u>, 210 F.3d 1201, 1205 (10th Cir. 2000). If plaintiff establishes a prima facie case, the burden shifts to defendant to offer a legitimate nonretaliatory reason for its actions. <u>McGarry v. Board of County Commissioners</u>, 175 F.3d 1193, 1201 (10th Cir. 1999). If defendant comes forward with a legitimate reason for its actions, the burden then shifts back to plaintiff to show there is a genuine issue of material fact as to whether defendant's proffered reason for the challenged action is pretextual. <u>Jones v. Denver Post Corp.</u>, 203 F.3d 748, 752 (10th Cir. 2000).

Pretext may be demonstrated by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." <u>Bullington v. United Air Lines, Inc.</u>, 186 F.3d 1301, 1317 (10th Cir. 1999).

"The requisite causal connection [for a prima facie case of retaliation] may be shown by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" <u>McGarry</u>, 175 F.3d at 1201 (quoting <u>Burrus v. United Telephone Co.</u>, 683 F.2d 339, 343 (10th Cir. 1982)). "Unless the [adverse action] is very closely connected in time to the protected conduct, the plaintiff will need

to rely on additional evidence beyond mere temporal proximity to establish causation." Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997).  "[T]emporal proximity between an employee's protected conduct and an adverse employment action 'is not sufficient by itself to raise an issue of fact' regarding pretext." Tran v. Trustees of State Colleges, 355 F.3d 1263, 1270 (quoting, Pastran v. K-Mart Corp., 210 F.3d 1201, 1206 (10th Cir. 2000)).

In this case, the court agrees with defendant that plaintiff cannot prove a prima facie case that he was discharged in retaliation for filing administrative charges of disability discrimination.  The decisions to terminate plaintiff and to deny his request for accommodation were made before plaintiff filed administrative charges.  The letter of January 14, 2004, which stated that he was officially terminated, was only a formality which had no impact upon plaintiff's pay and job benefits that had long since ceased.  The letter itself was written several months after the administrative charges were filed.  This also limits any inference of retaliation which one could draw from the timing of the events.

We also agree with defendant that plaintiff cannot establish a causal link between his discharge and conduct protected by the ADA or his filing and prosecution of his workers' compensation claim.  Plaintiff admits that there is no direct evidence of

16

retaliation.  Plaintiff contends, however, that a causal connection can be inferred from the following evidence:  first, that plaintiff was discharged a couple of weeks after the Appeals Board issued its order deciding plaintiff's workers' compensation claim; second, defendant's prior treatment of plaintiff which allowed him to work as a package car driver with a lifting restriction of only 30 pounds in December of 1999; third, the conclusions of Dr. Poppa that plaintiff could return to work as a package car driver; fourth, the statement by Ms. Sloan which plaintiff contends was "harassing;" and fifth, a reference to plaintiff's workers' compensation case in the statement notifying plaintiff of his discharge.

We do not believe this evidence is sufficient to establish a reasonable inference of pretext or illegal retaliation in plaintiff's discharge from employment.  No inference of retaliation can be drawn from the temporal proximity of plaintiff's formal termination from employment and the decision of the Appeals Board for the Kansas Division of Workers' Compensation.  The evidence is clear that the decision to discharge plaintiff was made by March 2003 when defendant rejected the request to accommodate plaintiff in the same or a different position.  It was known by then that plaintiff would be formally terminated after his workers' compensation case was closed.  Consequently, the timing of plaintiff's termination after the issuance of the Appeals Board

decision is not evidence of retaliation.

Plaintiff's work as a package car driver in December 1999 after he injured his back also does not support plaintiff's claim of retaliation. It is not argued that this work was disadvantageous to plaintiff and thus, the start of a pattern of alleged retaliation. Instead, it is asserted that the work in December 1999 demonstrates that plaintiff was capable of continuing to work as a package car driver. This does not help to establish retaliation for three reasons. First, plaintiff worked under weight restrictions and limits regarding his responsibilities in December 1999 which were not consistent with the job requirements for a package car driver. Second, plaintiff was not determined by any doctor to be permanently disabled from work responsibilities expected of a package car driver in December 1999. Therefore, any accommodation was based upon a temporary restriction on plaintiff's work capabilities. Finally, whatever plaintiff was allowed to do in December 1999 obviously predates the conclusions of Dr. Fevurly and Dr. Brown under the provisions of the collective bargaining agreement that plaintiff was permanently restricted from labor that met the requirements of a package car driver. This was a conclusion that the collective bargaining agreement stated could not be circumvented by the employer or the union.

We also reject the claim that Dr. Poppa's examination of plaintiff demonstrates pretext or retaliation. Dr. Poppa's

examination was not made pursuant to the collective bargaining agreement.  It was made pursuant to the workers' compensation case. Defendant relied upon the examinations done pursuant to the collective bargaining agreement to render its decision to terminate plaintiff.  There is no evidence that defendant was motivated by something other than the opinions of Dr. Fevurly and Dr. Brown. Moreover, Dr. Poppa concluded that plaintiff could return to work with restrictions which could be read as inconsistent with the job requirements for a package car driver.  For instance, his opinion does not specifically reference work for extended hours, lifting 70-pound packages above shoulder level, or lowering 70-pound packages to foot level.

Plaintiff refers to the coarse remark from Ms. Monica Sloan to support his claim that his termination was in retaliation for his administrative charges under the ADA or his workers' compensation claims.  Ms. Sloan managed workers' compensation claims for defendant.  As part of her job, she contacted injured workers, defendant's physicians, attorneys and the claims manager for defendant's workers' compensation insurance carrier.  The alleged remark that plaintiff could "eat shit and die" after defendant and he reached a work comp settlement was interpreted by plaintiff as exhibiting hostility toward plaintiff for pursuing his workers' compensation case.  Ms. Sloan testified in a deposition that she did not recall making that statement, but that she was frustrated

19

with plaintiff's repeated requests for reinstatement, since she believed all of the processes for returning plaintiff to work had been exhausted. For the purposes of summary judgment, we assume that Ms. Sloan did make the alleged statement.

This alleged remark was made after the decision to terminate plaintiff had been made. The comment itself indicates as much. The court does not believe this isolated statement creates a genuine issue of fact as to defendant's motivation for plaintiff's termination. The remark, while insensitive, reflects an inflexible but nondiscriminatory policy of officially terminating employees at the conclusion of workers' compensation proceedings if, under the provisions of the collective bargaining agreement, it previously has been determined that the employees are not physically qualified to return to work, and the employees are not "disabled" for the purposes of the ADA. In sum, this isolated statement does not tint defendant's policy of terminating employees under the processes of the collective bargaining agreement with a retaliatory motivation. See Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir. 1994) (rejecting isolated or ambiguous comments not related to termination decision as evidence of pretext).

Finally, the reference to workers' compensation in plaintiff's notice of termination is neutral. It denotes that the timing of plaintiff's formal notice of termination was triggered by the closing of his workers' compensation claims. It does not denote

that the motivation for terminating plaintiff was to retaliate for the filing or prosecution of workers' compensation claims.

In conclusion, the court finds that plaintiff cannot establish a reasonable factual basis for his claim that he was retaliated against for filing and proceeding with administrative claims under the ADA or workers' compensation claims under state law.

<u>Conclusion</u>

Plaintiff's motion to file a surreply brief to the motion for summary judgment is granted.  Upon a careful review of that pleading and the other pleadings before the court, defendant's motion for summary judgment shall be granted.

**IT IS SO ORDERED.**

Dated this 1st day of March, 2006 at Topeka, Kansas.


                                    s/Richard D. Rogers
                                    United States District Judge

21